

Nixon & Vanderhye P.C.
901 N. Glebe Road, 11th Floor
Arlington, VA 22203

Jeff Goehring
703-816-4404
703-906-0200
jgoehring@nixonvan.com

March 27, 2026

VIA ECF
The Honorable Nina R. Morrison
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: Crosslist BV v. Cross Listing Inc., et al., No. 1:26-cv-00304-NRM-VMS**

Dear Judge Morrison:

Plaintiff Crosslist BV respectfully submits this response to Defendants' March 25, 2026 pre-motion conference letter, ECF No. 16. Regarding Defendants' procedural irregularities, Plaintiff notes only that Rule 5.1.2.1 provides that filing of a pre-motion conference letter within the Rule 12 time period "shall constitute timely service of a motion," such that Defendants did not need to "complete[] the full pre-motion conference process" before the March 23 answer deadline as their letter ECF No. 16 suggests.

The contemplated Rule 12(b)(6) motion should not be authorized because it is not a genuine pleading-sufficiency motion. The Complaint alleges that Plaintiff has continuously used the CROSSLIST mark and logo in U.S. commerce since at least August 16, 2020; that the mark is the subject of U.S. Registration No. 6,807,533 on the Principal Register for SaaS services for listing and relisting products across multiple online marketplaces; that the registration issued on August 2, 2022 and remains valid and subsisting; and that Plaintiff owns all right, title, and interest in the mark and registration. Compl. ECF 1 ¶¶ 14-17. The Complaint further alleges that Defendants later adopted the confusingly similar "Crosslisting" designation as a source-identifier for the same type of services, used it at crosslisting.com and in app stores, persisted after the USPTO refused Defendants' own applications to register CROSSLISTING as confusingly similar to Plaintiff's prior U.S. Registration No. 6,807,533 for CROSSLIST, further persisted after cease-and-desist letters, and caused actual consumer confusion, including misdirected support requests, refund demands, and customer emails attaching screenshots from Defendants' own

1

password-recovery page. *Id.* ¶¶ 21-26, 27-37, 38-44. Taking those allegations as true, the Complaint plainly states plausible trademark claims.

The classification of a mark as generic, descriptive, suggestive, or arbitrary is based on how the purchasing public for the particular good perceives the mark. *Courtenay Commc'ns Corp. v. Hall*, 334F.3d 210, 215 (2d Cir.2003). This is a factual determination. *Id.* As the Second Circuit explained:

> It is usually true that the classification of a mark is a factual question, and that the question turns on how the purchasing public views the mark. The pleadings and documents necessarily relied upon by plaintiff's complaint, which were all that the district court could rightfully consider in deciding the motion to dismiss for failure to state a claim, are insufficient for determining the critical fact of how the public views [a] mark.

*Id.* (internal citations omitted). Defendant's classification argument is thus premature.

Defendants cannot avoid the pleaded registration by asking the Court to decide, on the pleadings, that the prominent, dominant word portion of the registered mark is generic and then to treat the design features as if they alone define the mark's protectable scope, particularly here with the prominent, dominant word portion of the mark is not disclaimed in the registration, as would have been the case if the USPTO had determined that the word portion of the mark was descriptive (much less generic). That is not a proper Rule 12(b)(6) inquiry.

Defendants' related suggestion that Plaintiff's textual references to CROSSLIST throughout the Complaint somehow convert this case into one about an unregistered word mark fares no better. The Complaint expressly identifies the registered composite mark and registration. Compl. ¶¶ 15-17, 46. Referring to the registered mark by its literal element in narrative allegations does not eliminate the registration or its presumption of validity. Nor does Plaintiff need a separate standard-character registration to plead infringement of the mark it actually owns, which in the literal word element CROSSLIST as a non-disclaimed feature. The pleaded question is whether Defendants' use of "Crosslisting" as a source-identifier tradename and brand for identical or closely related services is confusingly similar to Plaintiff's registered mark and the goodwill symbolized by it. Compl. ¶¶ 25, 47, 52, 58, 64. That is a merits question; it is not a pleading defect.

*King-Seeley Thermos Co. v. Aladdin Indus., Inc.*, 321 F.2d 577, 580 (2d Cir. 1963), emphasizes that a mark is not generic merely because it has some significance as an indication of the nature or class of an article; to become generic, its principal significance must be its indication of the nature or class of the goods or services rather than of origin. 321 F.2d at 580. Applying that standard here would require evidence of what resellers and marketplace sellers understand CROSSLIST to mean. The Complaint does not establish that fact; it alleges the opposite—that

CROSSLIST identifies Plaintiff as the source of software and services. Compl. ¶¶ 19-20.

When a mark has been registered, moreover, it is presumed not to be generic, and the party challenging validity bears the burden of overcoming that presumption with evidence. *FragranceNet.com, Inc. v. Les Parfums, Inc.*, 672 F. Supp. 2d 328, 334 (E.D.N.Y. 2009) (citing *Reese Publ'g Co. v. Hampton Int'l Commc'ns, Inc.*, 620 F.2d 7, 11 (2d Cir. 1980)); see also 15 U.S.C. § 1115(a). The cases *FragranceNet* collected identify the kinds of evidence relevant to that inquiry—consumer surveys, testimony of consumers or trade professionals, dictionary definitions, competitor usage, media usage, and the proponent's own usage—precisely because genericness is a public-perception question, not a pleading question.

Defendants are asking the Court to determine, on the pleadings, that in the minds of the relevant purchasing public CROSSLIST is not source-indicating at all, but merely the common name of the services identified in Plaintiff's registration. *FragranceNet* holds that such a determination is inappropriate on a motion to dismiss, especially where a registered mark is involved and the challenger has no evidentiary record sufficient to overcome the statutory presumption. 672 F. Supp. 2d at 334-38. *FragranceNet* further observed that neither the court nor counsel was aware of any case in this Circuit in which, at the motion-to-dismiss stage and without an evidentiary record, a court had dismissed a trademark claim on the ground that a registered product or service name was generic as a matter of law. *Id.* at 338.

The Second Circuit's decision in *Courtenay* also involved a composite mark. There, the Court of Appeals reversed dismissal where the district court had concluded that the composite mark "iMarketing News" and design was generic. 334 F.3d at 215-17. The Second Circuit emphasized both that classification of a mark ordinarily is a factual question and that whether a composite mark, considered as a whole, is generic cannot be resolved on the pleadings. *Id.* at 215-16. In a word-and-design mark, the literal portion often is the dominant portion because that is what consumers use to request the goods or services. *E.g. In re Viterra Inc.*, 671 F.3d 1358, 1366-67 (Fed. Cir. 2012); *see also Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.,* 796 F.Supp.2d 458, 465 (S.D.N.Y.2011) ("While a composite mark (consisting of both a word element and a design element) must be considered in its entirety, trademark law recognizes that the word portion is often more likely to be impressed upon a purchaser's memory because it is the word that purchasers use to request the goods and/or services."). That point is especially apt here, where the registration prominently features the word CROSSLIST and the Complaint alleges that Defendants use the highly similar "Crosslisting" designation as a source-identifier for the same and similar services. Compl. ¶¶ 25-26, 38-44, 47, 52, 57-60, 64-66.

Defendants' authorities do not support dismissal. *CES Publ'g Corp. v. St. Regis Publ'ns, Inc.*, 531 F.2d 11 (2d Cir. 1975), involved a publication-title dispute and a Supplemental Register registration which, unlike the Principal Register

registration alleged here, is not afforded the presumption of validity or the presumption that the registrant owns a trademark, and it was decided against an evidentiary backdrop developed in conjunction with preliminary-injunction proceedings. *FragranceNet* explained why *CES* is a poor fit outside that narrow publication-title context. 672 F. Supp. 2d at 336-38. *Closed Loop Mktg., Inc. v. Closed Loop Mktg., LLC*, 589 F. Supp. 2d 1211 (E.D. Cal. 2008), is even farther afield: it involved an unregistered term and therefore no statutory presumption of validity at all. *Id.* at 1217-18. Defendants' fallback point that secondary meaning cannot save a generic term likewise assumes the very factual conclusion they ask the Court to reach prematurely. See *FragranceNet*, 672 F. Supp. 2d at 338-39.

The brief Defendants have already served relies on not just on the Complaint, but also on a non-final Office Action in Plaintiff's separate word-mark application as the USPTO, plus dictionary material and asserted third-party usage, all of which confirms that the 12(b)(6) motion is not appropriate.

The same flaw runs through Defendants' proposed attack on Counts II through IV. Those claims depend on the same disputed premise that CROSSLIST is generic, even though the Complaint alleges the opposite and pleads Defendants' knowledge of Plaintiff's rights, actual confusion, bad-faith domain use, and willful persistence after USPTO refusals and cease-and-desist letters. Compl. ¶¶ 27-37, 38-44, 51-60. At this stage, those allegations must be accepted as true, not displaced by Defendants' preferred factual narrative.

For those reasons, Plaintiff respectfully requests that the Court decline to authorize the contemplated Rule 12(b)(6) motion.

Respectfully submitted,

Dated: March 27, 2026

Jeff Goehring
Nixon & Vanderhye P.C.
901 N. Glebe Road, 11th Floor
Arlington, VA 22203
703 816-4404
703-906-0200
jgoehring@nixonvan.com

Counsel for Plaintiff Crosslist BV